**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **15 CR 644** |
| **v.** | ) | **Honorable Harry D. Leinenweber** |
| | ) | |
| **EUGENE WALLACE,** | ) | |
| **Defendant.** | ) | |

**EUGENE WALLACE'S SENTENCING MEMORANDUM**

Leather can be a difficult material to work with. It's thick and tough and requires special tools for working it. It can't be sewn together like regular fabric; without the proper preparations, a needle would break trying to pierce through the layers. Eugene Wallace learned how to work leather from the older men who have been assigned to work in the leather workshop at Pekin FCI. Starting with a large sheet of leather, Mr. Wallace lays his cardboard pattern out and carefully cuts the shape that will eventually become a backpack for his daughter. Every single stitch requires a hole punched through the layers of leather before the thread can join the pieces together. Each hole must align with the last for a straight stitch. Even the edges must be finished with this process: a thin strip of leather folded around each edge, pierced, and hand sewn on to the backpack. With the backpack completed, Mr. Wallace has scored his daughter's name into the leather and then surrounds each letter with hand stitching. It is a painstaking process, and one that Mr. Wallace's daughter, Saniya, probably will not appreciate at the age of 13. It is the first thing Mr. Wallace has given her that he has made completely from scratch, with all the care and attention he wishes he could provide her by being present with her. As he

finished her backpack, he begins the process all over again to make one for Saniya's half brother.

Mr. Wallace asks the Court to consider not just his criminal acts, but also the progress he's made while at Pekin FCI. A sentence within the guideline range far exceeds what is just or necessary in this case. A sentence of 41 months is sufficient, but not greater than necessary to accomplish the goals of 18 U.S.C. §3553(a).

## I.    THE ADVISORY SENTENCING RANGE

The base offense level in this case as originally determined by United States Probation was 24 under U.S.S.G. § 2K2.1, based in part on a conviction for the possession with intent to distribute a controlled substance. Subsequently it was discovered that Mr. Wallace's conviction was actually for possession of a controlled substance, which does not qualify as a controlled substance offense as required for the enhanced offense level under §2K2.1. As such, Probation recalculated Mr. Wallace's base offense level at 20 because Mr. Wallace has a previous conviction for a crime of violence. Four points were assessed pursuant to § 2K2.1(b)(6)(B) because the instant offense was committed in connection with another felony. Three points were subtracted from the offense level for acceptance of responsibility, resulting in a total offense level of 21. With a Criminal History Category of VI, Mr. Wallace's resulting guideline range is 77 to 96 months.

## II.  A SENTENCE OF 41 MONTHS WOULD SATISFY THE GOALS OF §3553(a).

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed

| (A) | to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; |
|-----|---|
| (B) | to afford adequate deterrence to criminal conduct |
| (C) | to protect the public from further crimes of the defendant; and |
| (D) | to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner. |

18 U.S.C. § 3553(a)(2).  In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense, and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. §3553(a)(1)-(7).

In *Pepper v. United States,* 562 U.S. 476, 480 (2011), the Supreme Court held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's post sentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range."

Since his initial sentencing, Mr. Wallace spends his time at Pekin FCI taking classes, working, and honing his leather craft.  Mr. Wallace is assigned to work construction, and according to the supplemental PSR, "he has displayed above-average work performance."  (See Supp. Report, Pg. 3).  He has successfully completed 25 classes offered at the prison, including ongoing classes relating to running his own business.  Mr. Wallace is currently enrolled in GED classes, which he takes every day, Monday through Friday. (See Exhibit 1)  When he is not working or attending classes, Mr. Wallace busies himself learning from the older inmates who are assigned to the leather workshop.  He enjoys the process of designing something and creating it to

completion.  Mr. Wallace has taken full advantage of the programs available to him in order to improve himself.  He has successfully completed the non-residential drug abuse program and received top marks for both his participation and his homework.  (See Exhibit 2 and 3).  He continues to work on his substance abuse issues by attending weekly NA/AA meetings.  Mr. Wallace's continued enthusiasm to improve himself goes a long way in lowering his risk of recidivism. Empirical evidence shows that the rate of recidivism is less for offenders who receive treatment while in prison, and even lower still for those receiving treatment outside of prison.  Lisa Rosenbaum, *Mandating Effective Treatment for Drug Offenders*, 53 HASTINGS L.J. 1217, 1220 (2002).  Receiving drug and alcohol treatment in a prison setting reduces recidivism by 6.5%. Elizabeth K. Drake, et. al. *Evidence-Based Public Policy Options to Reduce Crime and Criminal Justice Costs: Implications in Washington State*, 2009 WA. INST. FOR PUB. POL'Y tbl. 1.

Most importantly, Mr. Wallace has taken classes on fatherhood and receives bible study lessons from a neighborhood pastor.  Mr. Wallace credits both the fatherhood classes and the bible lessons, which focus on fathering, with repairing his relationship with his daughter.  Mr. Wallace is extremely proud of his daughter, who starts high school in the fall, and he hopes to reunite with her before her final year there.  The work that Mr. Wallace has done to repair and maintain his family relationships will only help him start his new life once he is released from custody.  Evidence exists showing that religious or spiritually based programs are important components of treatment by fostering pro-social values and lifestyles, and contribute to the reduction of recidivism.

Thomas P. O'Connor & Michael Perreyclear, *Prison Religion in Action and its Influence on Offender Rehabilitation*. 35 Journal of Offender Rehabilitation 11 (2002).[1]

Since his original arrest in this case, Mr. Wallace has suffered several losses- his brother passed away from cancer shortly after his original sentencing, and his aunt passed away while he was at Pekin. Mr. Wallace's longtime fiancé, Clanthiana Tripplet completed coursework to become a phlebotomist when she was diagnosed with multiple sclerosis. She currently lives with Mr. Wallace's mother, as she is now unable to work. Clanthiana's diagnosis has motivated Mr. Wallace even further to learn how to run a successful business so that he can support Clanthiana when he is released. He hopes to run a barbershop and beauty shop upon his release and is using Pekin's resources to put that plan into action.

### III. Conclusion

Mr. Wallace should receive a below-guidelines sentence of 41 months. Although Mr. Wallace has a lengthy criminal past, the length of his guideline sentence is influenced by some of his oldest criminal history. Prior to his incarceration, Mr. Wallace began to take personal responsibility for his life, working his first full time job and taking care of his daughter. He has a sincere desire to change, which is reflected in the actual changes Mr. Wallace started making before his arrest in this case.

---

[1] *See also* Byron R. Johnson, *Religious Programs and Recidivism Among Former Inmates in Prison Fellowship Programs: A Long-Term Follow-up Study*. 21(2) Justice Quarterly 329 (2004) (Inmates active in bible study significantly less likely to recidivate).

**WHEREFORE**, for the foregoing reasons, Mr. Wallace respectfully requests a sentence of 41 months, which is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

s/Quinn A. Michaelis

_____
Quinn A. Michaelis
Attorney for EUGENE WALLACE
Quinn  A. Michaelis
73 W. Monroe
Chicago, IL 60603
(312)714-6920

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2018, I electronically filed the above

SENTENCING MEMORANDUM OF EUGENE WALLACE

with the Clerk of Court using the CM/ECF system to all listed parties in the case.

Respectfully Submitted on June 24, 2018.


By His Attorney,

s/ Quinn A. Michaelis

Quinn A. Michaelis
Attorney For EUGENE WALLACE
73 W. Monroe
Chicago, Illinois 60603
312-714-6920